1           **UNITED STATES DISTRICT COURT**
            **MIDDLE DISTRICT OF FLORIDA**
2                 **TAMPA DIVISION**

3    UNITED STATES OF AMERICA,

4                        Plaintiff,

5         vs.                    CASE NO. 8:14-CR-55-T-23EAJ
                                 August 6, 2014
6                                Tampa, Florida
                                 8:40 - 9:45 a.m.
7
     CARLINGTON CRUICKSHANK,
8
                         Defendant.
9    _____/

10

11              TRANSCRIPT OF SENTENCING
                   (Document No. 77)
12        BEFORE THE HONORABLE STEVEN D. MERRYDAY
                UNITED STATES DISTRICT JUDGE
13

14   **APPEARANCES:**

15   For the Government:  JOSEPH K. RUDDY, ESQ.
                         Assistant U.S. Attorney
16                       400 N. Tampa Street, Suite 3200
                         Tampa, Florida 33602
17                       813/274-6000

18   For the Defendant:  JENNY L. DEVINE, ESQ.
                         Assistant Federal Defender
19                       400 N. Tampa Street, Suite 2700
                         Tampa, Florida 33602
20                       813/228-2715

21   Court Reporter:     Howard W. Jones, RPR
                         801 N. Florida Avenue
22                       Suite 15A
                         Tampa, Florida 33602
23                       813/301-5024

24

25   Proceedings reported and transcribed by
     computer-aided stenography.

                 UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION

```
 1                    P R O C E E D I N G S

 2           (Court called to order.)

 3           THE COURT:  Please be seated.

 4           Good morning.  We are together in case

 5  14-criminal-55, the United States of America vs. Carlington

 6  Cruickshank.

 7           Who speaks for the United States?

 8           MR. RUDDY:  Joseph Ruddy for the government.  Good

 9  morning, Your Honor.

10           THE COURT:  Good morning, Mr. Ruddy.

11           And who speaks for the defense?

12           MS. DEVINE:  Good morning, Your Honor, Jenny

13  Devine on behalf of Mr. Cruickshank.

14           THE COURT:  Good morning, Ms. Devine.

15           And good morning, Mr. Cruickshank.  How are you?

16           THE DEFENDANT:  All right.

17           THE COURT:  Mr. Cruickshank, on May 22nd of this

18  year, 2014, a jury found you guilty of Count One of an

19  indictment.  Count One charges you with conspiracy to

20  possess with the intent to distribute five kilograms or more

21  of cocaine while aboard a vessel subject to the jurisdiction

22  of the United States, in violation of parts of Section 70503

23  and 70506 of Title 46.

24           And a jury also found you guilty of Count Two,

25  which charges you with possession with the intent to
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    distribute five kilograms or more of cocaine while aboard a

2    vessel, again, subject to the jurisdiction of the United

3    States and in violation of parts of Section 70503 and 70506.

4            Consequently, upon the verdict of the jury, you

5    have been adjudicated guilty of each of these offenses, so

6    we have arrived at the time to determine your sentence.

7            I will determine your sentence by first

8    calculating an advisory sentence in accord with the United

9    States Sentencing Guidelines and by next inviting both the

10   United States and the defense to direct my attention to any

11   matter, including those that appear at 18 U.S.C. 3553(a),

12   that I should consider in arriving at a final and reasonable

13   sentence in accord with applicable law.

14           I will begin by asking Mr. Ruddy if he's had an

15   opportunity on behalf of the United States to review and

16   evaluate the presentence report and, if so, whether the

17   United States objects either to the factual content of the

18   presentence report or to the application of the Sentencing

19   Guidelines that is recommended by the United States

20   Probation Office?

21           MR. RUDDY:  Your Honor, I have reviewed the

22   addendum or the updated revised presentence report and I

23   have no objection to the facts or the guideline

24   calculations.

25           THE COURT:  Ms. Devine, have you and

1  Mr. Cruickshank had an opportunity together to review and

2  evaluate the presentence report?

3          MS. DEVINE:  Yes, Your Honor.

4          THE COURT:  Mr. Cruickshank, have you seen the

5  presentence report and discussed it with your counsel?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Is there objection, Ms. Devine, to the

8  factual content of the presentence report?

9          MS. DEVINE:  Yes, Your Honor, in that he continues

10 to assert his innocence for appeal purposes, so I do believe

11 that it's an accurate portrayal of the facts heard at trial,

12 but for appellate purposes I do believe I need to object to

13 the facts.

14         THE COURT:  All right.  The objection is overruled

15 and the Court adopts the factual content of the presentence

16 report.

17         I believe you may have had another objection or

18 two to the guideline calculation; is that right, Ms. Devine?

19         MS. DEVINE:  Yes, Your Honor.

20         THE COURT:  So I'll recognize you to advance those

21 and then we'll recognize the United States.

22         MS. DEVINE:  Thank you, Your Honor.  Your Honor, I

23 did have an objection to the removal of the minor role in

24 the final presentence report.  We are asking the Court to

25 find that Mr. Cruickshank had a minor role, as found in

1    Section 3B1.2(b), which would give him two levels less under

2    the Guidelines, which additionally affects, under Section

3    2D1.1(a)(5) a four-level reduction under the drug guideline

4    or a six total level reduction, which would result in an

5    offense level of 34 and, with his criminal history category

6    of II, a low end of 168 months and a high end of 210 months.

7          Your Honor, the minor role issue has considerable

8    impact on the Guidelines here, a seven- to 13-plus year

9    difference in the guideline range without Amendment 782

10   really.  It's almost a solely factual determination by the

11   this Court.  You have considerable discretion in the matter

12   according to the Eleventh Circuit, especially here, given

13   that it was a trial and you've heard everything there is to

14   hear about the facts of this case.  And we also have

15   transcripts from Mr. Acosta's testimony that the Court may

16   have seen at Docket Entry 71 and 72.

17          According to the PSR, Your Honor, the facts that

18   have been found to warrant no role reduction here, I

19   believe, are four specific factual situations in this case:

20          First, that Mr. Cruickshank provided GPS

21   coordinates;

22          Second, that he assisted in the GPS programming;

23          Third, that he co-piloted the vessel; and,

24          Fourth, that there were 171 kilos onboard the

25   vessel.

```
 1              As for the first two, the coordinates and the GPS
 2    programming, you know, just a quick factual argument there.
 3    These are minor activities that essentially any third party
 4    could have done.  It need not have been Mr. Cruickshank.  In
 5    fact, coordinates could have been mailed, GPS programming
 6    could have been taught to Mr. Acosta via the internet.  This
 7    didn't require a third person or even a person to do these
 8    things and they're, in the larger scope of things, a minor
 9    role.
10              THE COURT:  But we're not talking -- I don't mean
11    to interrupt you, but you would agree that the question is
12    not whether this transportation could have been designed in
13    such a way as to make his role less, but whether the offense
14    as it actually occurred results in a characterization of his
15    role as minor?
16              MS. DEVINE:  I don't disagree with the Court and I
17    think that the case that I was gonna discuss, which is the
18    De Varon case, which is what the government cited to support
19    their original objection to take minor role off of the PSR,
20    and I think that it's a good analysis from the Eleventh
21    Circuit on how this Court should view role reduction.
22              THE COURT:  It is a binding analysis on --
23              MS. DEVINE:  Yes, Your Honor.
24              THE COURT:  -- this Court that result -- that
25    resulted in the United States Sentencing Commission after
```

1   *De Varon* adopting exactly that.  At the moment it changed

2   the role -- the minor role provision.

3          MS. DEVINE:  And that's why I think the Court is

4   absolutely correct, because that's what *De Varon* discusses

5   in that case.

6          I would also -- I would just note before getting

7   into the discussion of that opinion that Mr. Cruickshank is

8   getting a two-level increase for co-piloting the vessel, so

9   that has been taken into account by the Guidelines.  And as

10  I will probably note again, the 171 kilos in this case is,

11  as far as boat cases go, far less an amount of cocaine than

12  we usually see in these sorts of cases.  And so just keeping

13  those arguments in mind, I did want to talk about the

14  *De Varon* case.

15         Essentially, it's a two-step analysis that the

16  Court has to look at, Mr. Cruickshank's role measured

17  against all of the relevant conduct here and

18  Mr. Cruickshank's conduct measured against others involved,

19  primarily here Mr. Acosta, because he was the one that the

20  Court heard from.

21         Before discussing those two steps, the Court in

22  *De Varon* generally discussed role reductions and the

23  application as to the Guidelines.  And they talked about,

24  first, minimal role, which is the four-level decrease where

25  a person in that situation will lack knowledge of the scope,

1    the structure, of the entire conspiracy, the activities of

2    others in that conspiracy.

3          And I would argue that the facts of this case

4    actually apply in some senses to Mr. Cruickshank for minimal

5    role.  There is a requirement of a small amount of drugs.

6    Again, I've argued that in the scope of boat cases, this is

7    a small amount as far as boat cases go.

8          But we're not seeking minimal role, we're only

9    seeking a minor role, not the four-level, but the two-level

10   reduction, simply that Mr. Cruickshank is less culpable than

11   most of the other participants in this conspiracy.

12         THE COURT:  Who in your view are the other

13   participants?

14         MS. DEVINE:  Mr. Acosta and the other individuals

15   his testimony referred to by name that were the individuals

16   with whom he was conspiring, both in Columbia, which he

17   referred to by name, and then the unnamed co-conspirators in

18   Jamaica that he was liaisoning with.  And so those

19   individuals all had a larger role, a more important role in

20   this conspiracy than the individual that was just sent to

21   pilot the boat and bring the coordinates over.  So I would

22   rely on his testimony as to those individuals to make that

23   argument.

24         As far as the *De Varon* opinion, it's obviously not

25   just Mr. Cruickshank's acts, but all of the relevant

1    conduct, everything that happened in this case, everything

2    that was discussed in trial, as measured against all of

3    those individuals.  And so we heard during the trial, it's

4    in evidence, about the manufacturer of the cocaine in

5    Columbia, it was transported to the beach, the boat

6    construction on the beach, the financial and travel

7    arrangements that were made, the security that occurred

8    during that process, the decisions on the Jamaican side

9    about the receipt location, distribution of the drugs, as

10   well as the crew that needed to be hired and the liaisoning

11   between those two.  And so this was all discussed mostly

12   through Mr. Acosta's testimony.

13        Mr. Cruickshank had nothing to do with any of that

14   portion of this.  Mr. Acosta was involved in -- or at least

15   in the know about almost all of it.  And so he essentially

16   facilitated most of it, whereas Mr. Cruickshank was more of

17   a sidenote as far as he was hired by these Jamaicans --

18   could have been anybody in Jamaica, it was him.  But he was

19   just hired by the Jamaicans, that he was flown over to

20   Columbia, told to deliver these coordinates, and he

21   co-piloted the boat.  That is the extent of his activities

22   in this case.

23        Everything else that took place, all the

24   complicated things that needed to happen to get the drugs to

25   Jamaica he was not involved in, other than bringing

1    coordinates essentially and co-piloting that boat.  And I

2    believe that the evidence supports my argument in that

3    respect based on Mr. Acosta's testimony.

4            And again, this is not a plea.  We know kind of

5    the intricate workings of this particular conspiracy,

6    because it was a trial and you got to hear that evidence.

7    And so a lot of times in these boat cases where there is a

8    request for minor role, it's a plea, and the factual basis

9    is limited and this Court can't hold a full blown trial to

10   try to determine these things necessarily at sentencing.

11   But here, we had lengthy testimony and the Court has a lot

12   of information before it to make this decision and what we

13   heard is that there was a large web of actions, essentially

14   those intricate -- essentially the conspiracy here to

15   coordinate a new route between Columbia and Jamaica with new

16   buyers and Mr. Cruickshank's involvement was minor in the

17   way I've already described it.

18           Essentially, though, I believe unless Mr. Acosta

19   is gonna be punished as an organizer or leader, they will be

20   punished the same.  If Mr. Cruickshank doesn't get a role

21   reduction, Mr. Acosta doesn't get a role enhancement, they

22   will be punished as if they had the same involvement.  And

23   that's why we have these Chapter 3 enhancements and

24   reductions.  And our argument today is Mr. Cruickshank,

25   based on the facts you heard during trial, should be

```
 1   eligible for the reduction in that Chapter 3 analysis.
 2           And in looking to Section 3553, and this is a
 3   sidenote, I'll argue that in a minute, but if that were to
 4   occur, if he were not to get a reduction, Mr. Acosta were
 5   not to get an enhancement and they're punished the same way,
 6   they are no longer -- it is -- they are sentences that are
 7   not reflecting similarly situated defendants, because I
 8   don't believe they are factually in this trial and that
 9   would not promote respect for the law.  So I think that
10   there is some interplay between the 3553(a) factors with
11   this argument.
12           Looking at the De Varon case, Your Honor, and
13   mostly on pages 942 and 943 of that opinion, they have a
14   discussion about drug courier cases and they find that,
15   because this was essentially a drug courier heroin case
16   where the -- I believe it's a woman here --
17           THE COURT:  Isabella Rodriguez De Varon, who is
18   famous in her own right at this point for reasons that she
19   wouldn't have chosen, I'm sure.
20           MS. DEVINE:  Seventy heroin pills she swallowed
21   from Columbia to the United States, she travels and gets
22   caught and, you know, that is a fairly typical unfortunately
23   courier case in that mule respect.
24           This is a different situation.  They're talking
25   here on page 942 about the fact that in many cases like hers
```

1    the only discernible facts are that she swallowed pills and

2    came over here.  A lot of stuff probably happened back in

3    Columbia, a lot of stuff probably would have happened in the

4    U.S. when she got there, but a lot of times there's no way

5    to discern what that conspiracy is.

6         Here we have a person who was on the boat with

7    Mr. Cruickshank who was not really supposed to be there, but

8    he was who had a lot of upper-level knowledge about what was

9    going on, both before and what would have potentially

10   happened after, who testified at a trial, and so this Court

11   has that information.

12        THE COURT:  There were just two of them on the

13   boat, right?

14        MS. DEVINE:  Correct, Your Honor.  And so I would

15   just distinguish *De Varon* on that basis.  First of all,

16   because this is a case where the Court has a lot more

17   information because of Carlos Acosta's involvement and his

18   testimony.

19        And second, it talks about shortly after that,

20   going into page 943, that the amount of drugs is a material

21   consideration that the Court has to look at.  And again, I

22   would argue that in the heartland of boat cases 171 kilos is

23   a small amount.  And that is in evidence, there was

24   testimony about the fact that this was a test run.  And so

25   the amount of drugs involved here was less than what the

1    Court normally sees, what would normally have been smuggled

2    over the Caribbean.

3            THE COURT:  Well, that's one way to look at it,

4    Ms. Devine, but honestly, the boat case quantities are so

5    astronomically larger than the vast number of drug cases in

6    the United States and you can bet, it's clear from the text

7    and clear from the history of the Sentencing Commission and

8    the Courts, that very few courts in the country, including

9    the en banc court in *Rodriguez De Varon*, even contemplated,

10   had any notion of a quantity as large as this one, the

11   171 kilograms, much less the thousand to 2,000 kilograms in

12   a typical go-fast boat case, much less the eight to 10 tons

13   we get in some of the old faux fishing boat cases, you know.

14   So these -- and this typically is pure cocaine, likely to be

15   multiplied by three or four, depending upon the -- well,

16   likely to be multiplied by three or four before it can be

17   compared to weights that are given in the average street

18   transaction or the average sale, you know, in Chicago or

19   something.

20           So, you know, you can look at it either way, but

21   these quantities are large.  This -- well, I understand your

22   point and you're making the point that you should make from

23   the defense's standpoint, but in terms of this trying to say

24   that 171 kilograms of high quantity cocaine -- high quality

25   cocaine, almost pure cocaine, is not a large quantity within

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
 1   the meaning of Rodriguez De Varon, they've never said --
 2   obviously because they can't, they can't draw a bright
 3   line -- I suppose they could, but it would be subject to all
 4   sorts of criticism and assault and challenge, but -- by
 5   they, I mean neither the Sentencing Commission or Eleventh
 6   Circuit have drawn a bright line for sure.  But I'm pretty
 7   sure that 171 kilograms of more or less pure cocaine might
 8   be well above that -- any rational barrier, any barrier that
 9   any rational person would choose to draw as a large quantity
10   case; in order words, so large that any participant in it
11   can't be said to be engaged in minor activity.
12          You know, it's sort of like -- and I even hate to
13   invoke such a thing, but it's such a thing that we would all
14   recognize immediately.  But even if you were a minor
15   participant, and there were several in the assassination of
16   Abraham Lincoln, this is no minor role, because the crime is
17   enormous, so...
18          MS. DEVINE:  And just my only response, because I
19   was at the end of my argument there, is that the Court look
20   at the totality of the evidence in front of you, because you
21   have a lot more than normal in these cases.
22          THE COURT:  Right.
23          MS. DEVINE:  And a lot more I believe than the
24   Court may have even had in the De Varon case.  And under the
25   totality of the circumstances of the relevant conduct here
```

1    and in comparison to the others involved, we would suggest

2    that he did have a minor role.

3            THE COURT:  All right.  Thank you, Ms. Devine.

4    You know, we've got a long history on these cases, and by

5    these cases, I mean these large quantity, international

6    transoceanic cases from the Central and South American

7    manufacturers to the North American consumers, distributors

8    and consumers, and there's an awfully long history here of

9    assessing these.

10           And, of course, this defendant is -- well, the

11   earlier rule, the pre-*De Varon* rule, absolutely disqualified

12   someone from consideration for a minor role if they were

13   charged only with their in-hand quantity.  So because they

14   weren't being charged with in effect the components, the

15   conspiratorial component or the quantities being dealt by

16   the conspiracy, the relevant conduct, however you want to

17   characterize it, it was a narrow charge and the rule was

18   that you could not by law be a minor participant in the

19   movement of a quantity of drugs that you were moving.

20           So what *De Varon* and the Sentencing Commission

21   change affected was to just lift the disqualification as a

22   matter of law and make it arguable.  So what *De Varon* was

23   doing was saying, well, here's more or less how you would --

24   how you would assess this and -- so we've been working on

25   it.  We had achieved in this building, which is the place

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

 1    where the vast majority of these cases land up because of

 2    geography, we had achieved near unanimity on this.  Now I

 3    understand that, as is always the case, there's been some

 4    erosion.

 5         It's unfortunate, but -- and the United States, as

 6    I understand it, is not choosing to appeal those denials,

 7    which makes a certain amount of discomfort for those of us

 8    who are attempting to do it correctly.  Excuse me, I think I

 9    just botched that up.  The United States has not appealed

10    the award of the minor role by one or two of our judges,

11    which makes everybody uncomfortable, or makes most of us

12    uncomfortable.

13         But anyway, Mr. Ruddy, what do you say about the

14    minor role issue?  I think I probably know, but --

15         MR. RUDDY:  Yes, Your Honor, you've covered what I

16    was -- essentially what I was going to say.  The facts here

17    are clear, the defendant was entrusted to smuggle the drugs

18    from Columbia to Jamaica and he was given essential -- not

19    only essential responsibility of safely doing --

20    transporting these drugs, but had the coordinates to deliver

21    them, which is another -- again, essential information.  He

22    possessed that, he was entrusted with that.

23         But as you've indicated, the role is determined

24    measuring the defendant's role against the relevant conduct.

25    He's -- as the opinion in *De Varon* says, one cannot be a

1    minor participant in their own conduct.  He's only being

2    held accountable for what he did.  He doesn't deserve a role

3    reduction.

4         Mr. Acosta and others, maybe a role enhancement

5    may be appropriate.  But this defendant being held

6    accountable solely for what he did, a minor -- a minor role

7    or mitigating role adjustment is inappropriate.

8         The importation is an essential part of this

9    conspiracy, it is the essential goal of this conspiracy.

10   Taking the argument here by counsel, when the United States

11   landed on the moon the astronauts were minor participants.

12   I think not.

13        THE COURT:  Thank you, Mr. Ruddy.

14        Ms. Devine, under the Sentencing Guidelines as

15   they've been interpreted, and I think they've been

16   interpreted correctly, and under *United States vs. De Varon*,

17   I think it's pretty clear that this is not a minor role.  I

18   think most everything that needs to be said has been said,

19   let me just add a couple of things.

20        One, I think the fact that there was only Acosta

21   and Mr. Cruickshank on this vessel makes this defendant's

22   claim for a minor role less interesting than if there had

23   been six people on that boat, because if he didn't go this

24   load doesn't go.  He was more an integral part of this.

25        And there was a third person who walked, wasn't

1    there?  There was a third person who was supposed to be

2    there who disappeared or vanished overnight strangely.  I

3    think not completely accounted for, as I remember, but there

4    was some explanation given, but nobody could verify it I

5    guess, there was only a single source for the explanation.

6           But anyway, yeah, I think we've said everything we

7    need to say except two things:

8           One, I think that 171 kilograms of high-quality

9    cocaine, almost pure cocaine in this circumstance, that will

10   be, as the druggies say, stepped on two or three or four

11   times is not even available for a minor role under the

12   language of *Rodriguez De Varon*.

13          But as I often say in these cases, when someone

14   undertakes at the behest of international organized crime to

15   transport a large cargo of contraband in a transoceanic

16   voyage from one continent to another and that voyage

17   necessitates the intervention of the United States military

18   to defeat it, they should not be surprised -- and the whole

19   of which is a dangerous operation with respect to the lives

20   of all participants because of the number of things that can

21   go wrong that could be fatal, those intended and those not

22   intended, and when they undertake that for what in their

23   world is premium pay and with the hope of, as in this case,

24   future engagements at premium pay, they should not be

25   surprised.  The law is entirely justified in characterizing

 1   and I do not apologize for penalizing it as not a minor

 2   offense or a minor role in that offense.  As a matter of

 3   fact, this is major crime with major consequences involving

 4   a large quantity.

 5          I grant you that normally we would see not less

 6   than about a thousand kilograms on these vessels, but the

 7   nature I think of this as sort of a test run with an ad hoc

 8   crew on a -- I believe even an ad hoc vessel maybe accounts

 9   for that small quantity and we'd have seen something in the

10   thousand or 2,000 range later.

11          I don't give any consideration to that prospect at

12   all in saying how to sentence this case at 171 kilograms.

13   That's a lot of cocaine.  That's an enormous amount of

14   cocaine, it's just that other cases present almost

15   unimaginable quantities of cocaine.  So I'm going to

16   overrule the objection.

17          And I'll say to Mr. Ruddy that it is

18   uncomfortable, because a couple of my colleagues started

19   granting these minor roles because they -- just because they

20   do.  And the United States is not appealing those and that's

21   very difficult.  This is a huge difference to this guy, to

22   this defendant right here.  And what it boils down to is not

23   the law of the land, but Steve Merryday.  If I granted it, I

24   presume you're not going to appeal it unless you decide to

25   pick on me rather than the other two people and I think

1    that's not the way -- that's not the way it should be.

2    There should be some sense that the penalty here is not

3    dependent upon the whim of the United States District Judge.

4            Now, there's some discretion to be exercised, but

5    this is a large -- this is a large difference for this

6    fella.  And I just have to say I think if the United States

7    doesn't care about it and isn't going to achieve some

8    uniformity in the building with respect to it, why don't you

9    just say so and let us all grant the minor role?  I'm sure

10   the other four of us would feel -- I don't have any ill-will

11   toward Mr. Cruickshank, and while I've tried to provide

12   leadership, both in writing and by my actions, in the

13   courthouse on this issue, about which I have no doubt that

14   I'm right, particularly under the present Attorney General,

15   I think that he may not even let you appeal it.  Or his, you

16   know, whatever the network is.  And if that's gonna be the

17   case, why should I continue to do it that way?

18           I suppose I'm bound by my oath to apply the laws

19   of the United States and this is the law of the United

20   States.  But it's -- in these times there appears to be some

21   parallel system that operates outside the laws of the United

22   States.  So I must say I'm a little uncomfortable about that

23   the United States is not doing something.  It's one thing

24   when it makes 30 months of difference, but it's another

25   thing -- I'm not lecturing you, Mr. Ruddy, I know that you

1   know this perfectly good and well, but I just want to say it

2   for whatever it's worth.  When it gets to be -- well, if the

3   United States doesn't think there's any point to enforcing

4   this distinction that has been drawn by an en banc panel of

5   the Eleventh Circuit, I think my -- let me make it clear.

6   My loyalty's to the laws of the United States and to an

7   en banc panel of the Eleventh Circuit, but I think the

8   United States Attorney's loyalty should be to that also and

9   that if somebody does not apply this rule, we ought to

10  clarify whether we all should or are all at liberty not to.

11  So that clearly should not be the status quo, but it is.

12         When this started, when the rule changed, when

13  *De Varon* was fresh, and there may be some judges out there

14  who think they're reducing the sentence under -- somehow

15  under *Booker* by granting a minor role, because they're

16  giving the same sentence they could otherwise give maybe

17  under *Booker*, but that, of course, is theoretically wrong

18  and not in accord with the two steps of a correctly

19  calculated guideline sentence and then an articulated 3553

20  sentence.

21         But, you know, there was room for disagreement,

22  but any room -- any room for reasonable disagreement is long

23  sense gone.  There have been hundreds, as you know, as you

24  both know, of affirmances just on my cases.  Just on my

25  cases.  And I've said on the minor role issue and I've set

```
 1    it up a couple of times to -- as long ago as that old case I
 2    wrote in one of your cases, Mr. Ruddy, what was it -- it was
 3    a long opinion and I had a long section in it about the
 4    different fact -- the different things that come to bear on
 5    this issue and had a footnote with about -- that was written
 6    in 2005 right after Booker, had a long footnote in it.  At
 7    that time was about 50 affirmances of every judge in the
 8    building on the minor role, so this was over then.
 9            But anyway, we've got to make this adjustment,
10    because we do have cases like this where it makes a big
11    difference.
12            I'll grant you a rebuttal if you want, Mr. Ruddy.
13            MR. RUDDY:  Your Honor, I can't disagree with
14    anything you said.
15            THE COURT:  Okay.  All right.  So that's
16    overruled.  Any other objection, Ms. Devine, to the minor
17    role -- I mean, to the guideline calculation?
18            MS. DEVINE:  No -- well, I shouldn't say no.  The
19    2D1.1 amendment, I know this Court has said that you are
20    not --
21            THE COURT:  I'm once again -- I know it's old
22    fashioned and it's probably even considered backward in
23    places, but I do consider myself bound by the express laws
24    of the United States and knowing that some new law may come
25    into effect in November, which by the way would give you the
```

```
 1   exact remedy when it becomes effective as you would ask me
 2   to give you now before it's effective, I just say I don't
 3   think I should do that.  I should just wait and see if it
 4   does and, if it does, we have thousands of these adjustments
 5   we're going to have to make and I'll be more than happen to
 6   do Mr. Cruickshank's.  But I'm just -- I see no reason in
 7   law, in logic, or even in morality to get out in front of
 8   this.
 9           The only possibility for an injustice and for a
10   disparity is if we granted this reduction to a select group
11   of lucky candidates and it was denied or altered in a way
12   that most people didn't get it.  Otherwise, that's the only
13   possibility for any wrong to occur.  And again, some of my
14   colleagues are just stampeding out the gate to get -- so
15   they can raise their hand and say, oh, I gave that
16   adjustment.
17           MS. DEVINE:  I understand.  And I hadn't asked the
18   Court since the July 18th issue, one, to the retroactivity
19   and all that, so I figured I'd make a more formal request
20   again and if the client wants us to, because there are --
21           THE COURT:  I understand.
22           MS. DEVINE:  -- some people at the jail who are
23   and some --
24           THE COURT:  I don't mind you asking.  I don't mind
25   his trying and I'll be happy to comply with the law when it
```

1    changes.

2           MS. DEVINE:  Thank you, Your Honor.  I have

3    nothing further in regards to the Guidelines.

4           THE COURT:  All right.  Then we have I think

5    arrived at Offense Level 40 and a criminal history category

6    of II.

7           There is no 5K1; is that right, Mr. Ruddy?

8           MR. RUDDY:  No, sir.

9           THE COURT:  And so, Ms. Devine, I'll recognize you

10   to advance any matter in mitigation or any matter under

11   3553.  After that I'll recognize Mr. Cruickshank, then I'll

12   recognize Mr. Ruddy.

13          MS. DEVINE:  Thank you, Your Honor.  Your Honor,

14   we are asking the Court to consider the 20-year sentence

15   here, the mandatory minimum.  Two decades is a lengthy

16   punishment for Mr. Cruickshank.  It's about -- slightly

17   under three times longer than his prior sentence and we hope

18   two decades of punishment would assuage any doubts of this

19   Court about whether or not he would be deterred or whether

20   that would provide general deterrence to others.  It would

21   keep him detained until around his mid 50s, depending on

22   gain time.  Again, a lengthy punishment and deterrent

23   effect.

24          I know this Court has heard a lot from the 2004

25   Sentencing Commission study on recidivism.  I think that

1   there is some relevant things to be taken from that study

2   for Mr. Cruickshank in this situation:

3            First, that they found in 2004 no relationship

4   between high offense levels and recidivism.  We certainly

5   have an extremely high offense level here and so I thought

6   that was -- beared noting.

7            There is, however, a relationship they found

8   between age and criminal history category and recidivism,

9   first, being that recidivism rates decline as age increases.

10  Folks over the age of 50 only have a 9.5 percent likelihood

11  of recidivism.  Folks with three points under their criminal

12  history only have an 8.5 percent chance of recidivism.  And

13  so the vast majority they note of Criminal History

14  Category II offenders do not recidivate.  And so I think the

15  Court, should he be imprisoned after the age of 50, based on

16  his criminal history, we are not likely to see him again.

17           Your Honor, for all the reasons I already stated

18  about factually what happened here, I don't think that we

19  need to reiterate those, I just refer back to my minor role

20  argument and the factual arguments made during that.

21           For those same reasons, the nature and

22  circumstances, the offense in this case, 20 years we would

23  argue is more than sufficient to accomplish the goals of

24  sentencing here.

25           I have informed Mr. Cruickshank that, you know, he

1    needs to be aware if he decides to allocute that there is a

2    potential appeal because it's a trial case, otherwise, you

3    know, I told him that he would have an opportunity to speak

4    to the Court.  I have nothing further in regard to the 3553

5    other than to again just reiterate any arguments I made

6    during the minor role, especially in regards to the issue

7    of -- that the Court has noted at length already about

8    similarly situated defendants and the sentences they are

9    receiving in these cases and --

10           THE COURT:  But the vast majority of them, except

11   for very recently and very few, the minor role is denied,

12   just as I've denied it here.

13           MS. DEVINE:  Yes, Your Honor.

14           THE COURT:  The disparity is being created by a

15   couple of people who I guess changed their mind or whatever

16   it is about it or have realized that they give it as a gift

17   without it being challenged by the United States or

18   whatever.  I just -- I don't know, we haven't talked about

19   it.  But that is where the disparity is.  And these

20   sentences, of course, the vast bulk of them in these cases,

21   are here in this building in this Division and in this

22   District, although we're more than happy to make

23   arrangements to share them with others.  So we have this

24   large reservoir of comparable sentences and they would

25   all -- most all commend the denial of this minor role in

```
 1    this circumstance.
 2           MS. DEVINE:  And the -- finally, the sentence that
 3    Mr. Acosta may or may not receive, as compared to the
 4    conduct that both engaged in -- and I understand he will
 5    have acceptance of responsibility.  Mr. Cruickshank opted to
 6    go to trial.  He would have been facing 14 years potentially
 7    had he -- 14 or 15, if I'm not mistaken, if he had pled
 8    guilty.  And so 20 years we would just argue is a -- I know
 9    the Court doesn't like significant, that word, is a lengthy
10    penalty that certainly accomplishes the goals of sentencing
11    and we would ask the Court to consider that.
12           THE COURT:  I don't dislike significant, I just
13    think people use it in important circumstances and don't
14    recognize that it really means nothing.  It's like numerous.
15    So he has a number of friends.  Well, zero is a number.  So
16    no one knows what the -- nowadays and more in vogue is the
17    word multiple.  Someone took two trips in a sentencing,
18    someone standing right there told me that they had taken
19    multiple trips.  Well, that was two.  I guess that's
20    multiple, depending on how you look at it.  The word
21    multiple is now being subject to the same bashing that the
22    word significant was not too long ago, so it's completely
23    meaningless.
24           And one thing, by the way, about the word
25    multiple.  You usually think of that as meaning iterations
```

 1    of the exact same thing, like multiples of seven.  Well,

 2    they're each a seven.  Multiple trips are not necessarily in

 3    the common parlance anymore than two identical trips.

 4             Anyway, thank you.

 5             Mr. Cruickshank, you do have an opportunity to

 6    speak on your own behalf this morning in mitigation of your

 7    sentence.  You're not required to say anything, but if you

 8    would like to say something, I would be happy to hear from

 9    you.

10             THE DEFENDANT:  Nothing.

11             THE COURT:  Was that a -- I couldn't quite hear

12    you.

13             THE DEFENDANT:  No, I don't want to speak.

14             THE COURT:  All right.  Thank you, sir.

15             Mr. Ruddy, I'll recognize you with respect to a

16    reasonable sentence in this matter.

17             MR. RUDDY:  Your Honor, as you pointed out, the

18    Guidelines were originally designed to eliminate disparity

19    and application of the Guidelines by the courts

20    appropriately, where appropriate areas for discretion or

21    levels of discretion would hopefully produce uniformity in

22    sentencing.  The defendant's prior conviction in Miami is

23    evidence -- is another example of exactly what you have

24    spoken about in terms of this courthouse.

25             He was arrested in January of 2004 on a vessel

1   smuggling over 1200 kilograms of marijuana, which is a

2   ten-year minimum mandatory sentence.  He apparently pled

3   guilty, but did not cooperate and received 70 months instead

4   of a minimum mandatory 120.

5          Perhaps he thought he was gonna receive a similar

6   treatment here.  Well, that wasn't -- that didn't happen.

7   The defendant was offered a plea agreement with a minimum

8   mandatory term of 20 years.  He refused it.  The explanation

9   was he was innocent.  That's fine.  If you're innocent, then

10  you go to trial.  He went to trial.  And he did what he did

11  and the Guidelines reflect his conduct accordingly.

12         He made his decision.  The Guidelines, given the

13  conduct, the role that this defendant had in a significant

14  international smuggling operation, and not his first trip

15  doing so, his at least second, whether that's multiple or

16  not is to be determined, but it is at least two that we can

17  document that he was involved in.  And after having been

18  released in 2009, in April of 2009, from Miami to go back

19  and do this -- involved in this again, whose fault is that?

20  And he has no one to blame but himself for the situation he

21  finds himself in today.  Any sentence within the Guidelines

22  range, Your Honor, would be appropriate.

23         THE COURT:  In a typical situation in a boat case,

24  had he been the captain and had they had two tons aboard and

25  had he been a Criminal History Category II offender, he

1    would be in the 188 to 235 range.

2            Would you like to comment, Mr. Ruddy, on a

3    sentence, which would be -- and the 20-year minimum

4    mandatory, of course, would cover the upper end of that

5    range.  Would you like to comment on that comparator as

6    an -- another indication of a reasonable sentence in the

7    circumstances?  Does that make sense?  Did my question make

8    sense?

9            MR. RUDDY:  I'm not sure I understand.  Is 20

10   years a reasonable sentence compared to --

11           THE COURT:  Right.  I was saying that if this were

12   a typical boat case and he had had a thousand kilograms and

13   he had been the captain or the load guard or whatever, let's

14   call him the captain, and he had had a prior offense and he

15   was a Criminal History Category II, his range would be 188

16   to 235, which would be covered by the minimum mandatory of

17   20 just looking at a comparative.

18           MR. RUDDY:  Well, that would be if he pled guilty.

19           THE COURT:  Correct.  Correct.

20           MR. RUDDY:  Here, he did not.  And those three

21   levels --

22           THE COURT:  Right.

23           MR. RUDDY:  -- when you get above 36 --

24           THE COURT:  Right.

25           MR. RUDDY:  -- you're talking big numbers.  And

 1   that's the dilemma or situation that virtually every mariner

 2   that comes to Tampa on an interdiction faces.  They

 3   forfeit --

 4          THE COURT:  Right.

 5          MR. RUDDY:  They're gambling with those three

 6   levels.  That's the difference between 15 years and 30

 7   years.  And therein lies the decision.  And most defendants

 8   elect to resolve it by admitting their guilt.  Some do not.

 9   That's entirely their decision.  Whatever they're

10   comfortable with we're comfortable with.  If they want to go

11   to trial, we'll try them.  And that's -- that was his

12   choice.

13          THE COURT:  I haven't sentenced anyone else -- I

14   haven't sentenced Acosta?

15          MR. RUDDY:  No, sir.

16          THE COURT:  I haven't sentenced anyone else that's

17   charged in the same offense?

18          MR. RUDDY:  No, sir.  Mr. Acosta is the only

19   co-defendant and he -- his sentencing was continued until

20   October.

21          THE COURT:  So he's picking up an additional two

22   levels on that one enhancement that's making a difference.

23   He's got a five-level difference from where he otherwise

24   would be.

25          Okay.  I can't remember now if I've asked.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
 1    Anything further from the United States?

 2              MR. RUDDY:  No.

 3              THE COURT:  Any reason not to proceed to sentence?

 4              MR. RUDDY:  No reason.

 5              THE COURT:  Anything further from the defense?

 6              MS. DEVINE:  No, Your Honor.

 7              THE COURT:  Any reason not to proceed to sentence?

 8              MS. DEVINE:  No, Your Honor.

 9              THE COURT:  Pursuant to the Sentencing Reform Act

10    of 1984, to the extent applicable after United States vs.

11    Booker, and pursuant to 18 U.S.C. 3553, Carlington

12    Cruickshank is committed to the Bureau of Prisons for 324

13    months.  This term comprises 324 as to Count One and 324 as

14    to Count Two.  The terms are concurrent.

15              Upon release, the defendant will serve a ten-year

16    term of supervised release comprising ten years as to Count

17    One and ten years as to Count Two, again, the terms

18    concurrent.

19              While on supervised release, the defendant will

20    comply with the standard conditions adopted in the Middle

21    District of Florida and, as well, the special condition that

22    if he is deported, he shall not reenter the United States

23    without the express permission of the United States.

24              As a qualifying felon, the defendant will

25    cooperate in the collection of his DNA as directed by the
```

1    probation officer.

2           I'll waive the mandatory drug testing requirements

3    of the Violent Crime Control Act and, as well, the

4    imposition of a fine.  I levy the special assessment of

5    $200, which is due immediately.

6           I have considered the policies and Guidelines of

7    the United States Sentencing Commission.  I have considered

8    the advisory guideline range that is derived from it.  I

9    have considered the factors at 18 U.S.C. 3553(a).  I

10   conclude that the announced sentence is sufficient, but not

11   greater than necessary, to comply with the statutory

12   purposes of sentencing, about which let me try to say

13   briefly:

14          As articulated earlier, this is a most serious

15   crime.  Again, an international transportation, transoceanic

16   transportation of high quality cocaine in a large quantity

17   at the behest of organized crime and requiring intervention

18   of the United States military, it's a serious offense

19   resulting in dangerous doings on the high seas.

20          This defendant, as the United States pointed out a

21   moment ago and as the defense counsel concedes, has a large

22   quantity drug trafficking offense from which he was released

23   only a short time really before he found himself ensnared in

24   this sort of offense.  So that is a troublesome personal

25   history for the -- and criminal history for the defendant.

```
1              The defendant elected to go to trial.  I must say
2    that the evidence was clear and convincing.  Well, it was --
3    excluded any reasonable doubt, is what I should have said,
4    and it did so with ease I thought.  The decision, as
5    Mr. Ruddy points out, of the defendant to go to trial was
6    consequential in terms of his sentencing.
7              But I would note that if the promised regulations
8    go into effect and the defendant is eligible for them as
9    they are finally enacted and made effective, then he perhaps
10   will be reduced to a sentence in the range of the minimum
11   mandatory anyway, so it may all circle around to very nearly
12   the same thing.
13             But in terms of the guideline calculation and
14   similar sentences, as I've already explained at too great a
15   length, this sentence is entirely consistent in theory and
16   in practice with many others that have been levied under the
17   same statutes and in this same Court and under similar
18   comparable circumstances.  So it's altogether reasonable and
19   mainstream in its nature.
20             Does counsel for the United States or the defense
21   have an objection to the sentence or the manner of its
22   announcement?
23             Mr. Ruddy?
24             MR. RUDDY:  No, Your Honor.
25             THE COURT:  Ms. Devine?
```

1          MS. DEVINE:  Yes, Your Honor, we just object to

2    the reasonableness of the sentence as being higher than

3    necessary to accomplish the goals of sentencing.

4          THE COURT:  Mr. Ruddy, what did you -- I take it

5    you investigated the sentence that was given in the earlier

6    offense and it was below the minimum mandatory?

7          MR. RUDDY:  Yes, sir.

8          THE COURT:  Were you able to ascertain what

9    happened?

10         MR. RUDDY:  I contacted the Assistant U.S.

11   Attorney in South Florida and said, did he cooperate?  And

12   he said no.  Now, they -- from the pleadings it did appear

13   that he qualified for the safety valve, which here normally

14   means you're going to debrief.  But when I contacted the

15   Assistant U.S. Attorney down there, did he ever give any

16   statements?  He said no.  Very curious to me how that could

17   have resulted in a sentence below minimum mandatory.

18         THE COURT:  So he got 70?

19         MR. RUDDY:  Got 70 instead of 120.

20         THE COURT:  So he got 70, so he served about 60

21   probably.

22         MR. RUDDY:  He was arrested I think it was in

23   January of 2004, January 26, 2004, and he was released from

24   custody April 5th, 2009, so a little over five years, 62, 63

25   months.

1              THE COURT:  Well, we know that was insufficient to

2    accomplish the statutory purposes of sentencing.  So if they

3    had...

4              Oh, well, the defendant is remanded to the custody

5    of the United States Marshal to await designation by the

6    Bureau of Prisons.

7              Did you have a request with respect to his

8    residency, Ms. Devine?

9              MS. DEVINE:  Coleman or Miami, please, Your Honor.

10             THE COURT:  All right.  I'll recommend that he be

11   housed in Miami, Florida.

12             Mr. Cruickshank, you do have a right to appeal

13   from the judgment and sentence.  With respect to that

14   appeal, there are two things I should tell you:

15             First of all, you do have a right to counsel on

16   direct appeal.  As it stands now, Ms. Devine and the office

17   of the public defender would be required to represent you in

18   that appeal unless other counsel is substituted by an order

19   of the Court;

20             Secondly, you begin an appeal by filing with the

21   Clerk of this Court a written notice of appeal, accompanied

22   by a filing fee and filed within 14 days.  If you have no

23   money and you cannot pay that fee, Ms. Devine can ask the

24   Court to waive the fee and, if that's granted, you can

25   appeal without payment.

1           So once again, you have a right to counsel, that

2   is a lawyer, on direct appeal at public expense, if

3   necessary; and, secondly, you have 14 days in which to file

4   a written notice of appeal or you will -- if you don't file

5   a notice, you will lose that right of appeal forever.

6           Anything further from the United States?

7           MR. RUDDY:  No, Your Honor.  Thank you.

8           THE COURT:  Anything further from the defense?

9           MS. DEVINE:  No.  Thank you, Your Honor.

10          THE COURT:  We are in adjournment.

11          (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **C E R T I F I C A T E**

2         I, Howard W. Jones, certify that the foregoing is
a correct transcript from the record of proceedings
3    in the above-entitled matter.

4

5                              /s *Howard W. Jones*

6                              _____
                              Howard W. Jones, RPR
                              Official Court Reporter
7                              United States District Court
                              Middle District of Florida
8                              Tampa Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25